Dear Honorable Haney,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Does the Court of Indian Offenses created at 26 C.F.R. § 11.1 et seq., have jurisdiction over civil proceedings involving members of western Oklahoma Indian tribes served by the Anadarko Area Office of the Bureau of Indian Affairs?
 2. If the answer to the first question is in the affirmative, are such decrees, orders, judgments and other final rulings by the Court of Indian Offenses entitled to recognition by the State of Oklahoma?
The Commissioner of Indian Affairs, with the authority vested in him by25 U.S.C.A. 2, promulgated regulations in 1979, codified at 25 C.F.R. § 11.1 et seq., which created a Court of Indian Offenses for certain western Oklahoma Indian tribes which are served by the Anadarko Area Office of the Bureau of Indian Affairs. 25 C.F.R. § 11-1(a)19. The tribes served by the Anadarko Area Office of the Bureau of Indian Affairs will be referred to collectively as "Tribes" for the purposes of this Opinion.
In order to answer the questions asked, both the regulations which established the Court of Indian Offenses and the Indian Child Welfare Act (25 U.S.C.A. 1901 et seq.) must be taken into consideration. Further, this opinion deals only with questions of civil jurisdiction and does not address issues of criminal jurisdiction.
In regard to civil jurisdiction, 25 C.F.R. § 11.22 details the jurisdiction of the Court of Indian Offenses. It states that "[t]he Court of Indian Offenses shall have jurisdiction of all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction and of all other suits between members and nonmembers which are brought before the courts by stipulation of both parties." Therefore, in order for the Court of Indian Offenses to have jurisdiction, the transaction which gave rise to the proceedings, must have occurred within Indian Country, which is defined at 18 U.S.C.A. 1151 as:
 "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."
Though this section of law originally was intended to define only the criminal jurisdiction of Indian courts, the United States Supreme Court has made the following comment:
 "While 18 U.S.C.A. 1151 is concerned, on its face, only with criminal jurisdiction, the Court has recognized that it generally applies as well to questions of civil jurisdiction." DeCoteau v. District County Court for the Tenth Judicial District, 420 U.S. 425, 427, n. 2, 95 S.Ct. 1082, 1084, n. 2, 43 L.Ed.2d 300, 304, n. 2 (1975).
In addition to the above, either both parties to the proceedings or the defendant in the proceedings must be members or a member of one of the Tribes. Any other suit involving members and nonmembers may be brought before the Court of Indian Offenses by stipulation of the parties.
In addition to the jurisdiction vested in the Tribes by 25 C.F.R. § 11.22, the Tribes are given exclusive jurisdiction under the Indian Child Welfare Act (25 U.S.C.A. 1901 et seq.) in child custody proceedings involving an Indian child who resides or is domiciled on a reservation, or is a ward of the tribal court. 25 U.S.C.A. 1911(a). Reservation, as used in the Indian Child Welfare Act, means Indian Country as defined by 18 U.S.C.A. 1151 and any lands not covered by that section, title to which is held by the United States in trust for any Indian tribe or individual or held by any Indian tribe or individual subject to a restriction by the United States against alienation.25 U.S.C.A. 1903(10).
It is then clear from a reading of the regulations and statutes cited above that the Court of Indian Offenses does have civil jurisdiction over actions arising in Indian Country among members of the Tribes and that in child custody proceedings as defined above, the Court of Indian Offenses has jurisdiction exclusive of the State of Oklahoma. Therefore, the answer to Question One is in the affirmative and the Court of Indian Offenses does have jurisdiction over civil actions for the Tribes served by the Anadarko Area Office of the Bureau of Indian Affairs.
In regard to the second question as to whether decrees, orders, judgments, and other final rulings of the Court of Indian Offenses are entitled to recognition by the State of Oklahoma, the Indian Child Welfare Act must first be examined.
At 25 U.S.C.A. 1911(d), the following language is found:
 "The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records and judicial proceedings of any other entity."
From a reading of the foregoing statute, it is plain that the State of Oklahoma is required to recognize decrees, orders, judgments, and other final rulings of the Court of Indian Offenses, which involve its jurisdiction under the Indian Child Welfare Act, by extending full faith and credit to all such decrees, orders, judgments, and other final rulings.
As to extending recognition by the State of Oklahoma to actions of the Court of Indian Offenses, other than those involving the Indian Child Welfare Act, there is no federal decision, statute, or regulation which requires the same. All the jurisdictions which have considered this question have accorded recognition to judgments of Indian courts either on the basis of full faith and credit or under the conflicts of law principle of comity. Those states which have accorded recognition by full faith and credit are New Mexico, Jim v. CIT Financial ServicesCorporation, 533 P.2d 751 (N.M. 1975); Idaho, Sheppard v. Sheppard,655 P.2d 895 (Idaho 1982); and Washington, Matter of the Adoption ofBuehl, 555 P.2d 1334 (Wash. 1976). Those states which have extended recognition via comity are Arizona, Brown v. Babbit Ford, Inc.,571 P.2d 689, 695 (Ariz.App. 1977), and Oregon, Matter of the Marriageof Red Fox, 542 P.2d 918 (Or.App. 1975). Based on a survey of the current state of the law, it appears that decrees, orders, judgments, and other final rulings of the Court of Indian Offenses are entitled to recognition at least under the theory of comity as expressed in Hilton v. Guyot,159 U.S. 113,16 S.Ct. 139, 40 L.Ed. 95 (1895). Comity may be afforded foreign decrees if the court had subject matter and personal jurisdiction, the decree was not obtained fraudulently, the legal system whose decree is to be recognized afforded basic due process protection, and the decree does not contravene public policy of the recognizing jurisdiction. These criteria are presumptively met by orders, decrees, judgments, and other final rulings of the Court of Indian Offenses. Duly authenticated judgments are entitled to a presumption that the rendering court had personal and subject matter jurisdictions, Simms v. Hobbs,411 P.2d 503 (Okla. 1966), though subject matter and personal jurisdiction are always open to inquiry by the State. Allen v. Allen,209 P.2d 172 (Okla. 1948), appeal dismissed and cert. denied, 336 U.S. 956,69 S.Ct. 891, 93 L.Ed. 1110. Due process and equal protection are guaranteed to litigants in the Court of Indian Offenses by the Indian Civil Rights Act of 1968. 25 U.S.C.A. 1302(8).
It is, therefore, the official opinion of the Attorney Generalthat:
 1. The Court of Indian Offenses for the tribes served by the Anadarko Area Office of the Bureau of Indian Affairs has exclusive jurisdiction over child custody proceedings pursuant to the Indian Child Welfare Act (25 U.S.C.A. 1901 et seq.) when the child is domiciled or resides in Indian Country as defined by 18 U.S.C.A. 1151 and 25 U.S.C.A. 1903(10) or when the child is a ward of the Court of Indian Offenses, 25 U.S.C.A. 1911(a);
 2. The Court of Indian Offenses for the tribes served by the Anadarko Area Office of the Bureau of Indian Affairs has exclusive jurisdiction of civil actions pursuant to 25 C.F.R. § 11.22 which arise in Indian Country as defined by 18 U.S.C.A. 1151 when the actions involve tribal members or wherein the defendant is a tribal member;
 3. Decrees, judgments, orders and other final rulings of the Court of Indian Offenses for the tribes served by the Anadarko Area Office of the Bureau of Indian Affairs which have been entered in child custody matters pursuant to the Indian Child Welfare Act (25 U.S.C.A. 1901 et seq.) must be accorded full faith and credit by the State of Oklahoma since such is required by federal statute found at 25 U.S.C.A. 1911(d); and
 4. All other decrees, orders, judgments, and final rulings of the Court of Indian Offenses for the tribes served by the Anadarko Area Office of the Bureau of Indian Affairs may be recognized by the State of Oklahoma under the theory of comity if such decrees, orders, judgments and other final rulings meet the requirements set forth in Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895); decrees, orders, judgments and other final rulings of the Court of Indian Offenses for the tribes served by the Anadarko Area Office of the Bureau of Indian Affairs presumptively meet these requirements.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
STEPHEN A. LAMIRAND, ASSISTANT ATTORNEY GENERAL